## Commonwealth of Pennsylvania, Insurance Department, Appellee, *v.* Equitable Beneficial Mutual Life Insurance Company, Appellant.

Argued March 5, 1975, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*Edward Gerald Donnelly, Jr.,* with him, of counsel,
*Fox, Rothschild, O'Brien & Frankel,* for appellant.

*David M. Narrow,* Assistant Attorney General, with
him, *Andrew F. Giffin,* Assistant Attorney General, and
*Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, June 19, 1975:

Equitable Beneficial Mutual Life Insurance Company, respondent, appeals from two orders of the Insurance Commissioner (Commissioner) dated April 18, 1974 and October 2, 1974 assessing $5,630.00 in penalties for its failure to make timely filing of quarterly statements requested by the Commissioner pursuant to the Act of May 17, 1921, P.L. 682, *as amended,* Section 320, 40 P.S. §443.

On September 26, 1973, a citation and notice of hearing was sent to the respondent from the Insurance Department (Department) alleging that the Commissioner had properly notified the respondent of the requirement that it file quarterly statements for the years 1971, 1972 and 1973 and further charging that:

1) the report due on November 15, 1971 for the quarter ending September 30, 1971, had not yet been filed;

2) the report due on May 15, 1972 for the quarter ending March 31, 1972 was filed 289 days late;

3) the report due on August 15, 1972 for the quarter ending June 30, 1972, was filed 85 days late;

4) the report due on May 15, 1973 for the quarter ending March 31, 1973, was filed 44 days late.

A hearing was scheduled for October 23, 1973 to enable the Commissioner to determine whether or not the respondent had violated the law and, if so, what, if any, sanctions might be appropriate.

The respondent, by its president, Harry Iezzi, replied by letter on October 6, 1973, explaining that a turnover in management in October of 1971 had resulted in the present management having been unaware of any quarterly filing requirements until June of 1973. No representative of the respondent, however, appeared at the hearing, and the Department presented testimony and introduced documents there which tended to show that the Commissioner had duly required the respondent to file the quarterly statements and that the respondent had failed

to do so in time. On April 18, 1974, the Commissioner issued an adjudication in which he found that the Department's allegations were true, and his order imposed a penalty amounting to $5,630.00, a figure computed by the assessment of a $5.00 fine per day for each of the statements which were filed late.[1] The total number of late days was 1,126. In addition, the Commissioner ordered that, unless the quarterly statement which was due on November 15, 1971 was filed with the Department within 30 days, the authority of the respondent to do new business would be suspended until that report was filed.

On May 17, 1974 the respondent submitted to the Commissioner a "petition for reconsideration, modification or rehearing." That petition requested that a rehearing be ordered, that the fine be reduced and that the requirement for filing of the unfiled 1971 quarterly statement be eliminated. In response, the Commissioner issued a supplemental order on October 2, 1974 denying the request for the rehearing and denying the request that the penalty be reduced but eliminating the requirement that the 1971 quarterly report be filed.

The respondent has appealed the Commissioner's adjudication to this Court under the provisions of the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, *as amended,* 71 P.S. §1710.1 et seq. and our scope of review is limited by Section 44 of the Administrative Agency Law, 71 P.S. §1710.44 which provides in part:

"After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary

---

1. The Commissioner calculated the late days for the unfiled 1971 report up to October 23, 1973, the date of the hearing.

to support its adjudication is not supported by substantial evidence."

Two reasons are now asserted in support of the respondent's position that the penalty ought to be reduced. It is first contended that the Secretary's action in ultimately eliminating the requirement for filing of the quarterly statement which was due on November 15, 1971 should prevent him from keeping in effect the $5.00 per day penalty for the late filing of that report. Section 320 of the Act of May 17, 1921, 40 P.S. §443, which gives the Commissioner the authority to require such quarterly reports as well as the authority to fine insurance companies which neglect to file them, provides in part:

"Every stock and mutual insurance company, association, and exchange, doing business in this Commonwealth, shall annually, on or before the first day of March, file in the office of the Insurance Commissioner a statement which shall exhibit its financial condition on the thirty-first day of December of the previous year, and its business of that year and shall, within thirty days after requested by the Insurance Commissioner, render such additional statement or statements concerning its affairs and financial condition as the Insurance Commissioner may, in his discretion, require. The Insurance Commissioner shall furnish to each of the insurance companies, associations, and exchanges blanks, in such form as he may adopt, for their statement; and he may make such changes, from time to time, in the form of the same as shall seem to him best adapted to elicit from them a true exhibit of their financial condition. Insurance companies of foreign governments, doing business in this Commonwealth, shall be required to return only the business done in the United States, and the assets held by and for them within the United States for the protection of policyholders therein.

"Any company, association, or exchange, which neglects to make and file its annual statement or other statements that may be required, in the form or within the time herein provided shall forfeit a sum not to exceed one hundred dollars ($100) for each day during which such neglect continues, and, upon notice by the commissioner, its authority to do new business shall cease while such default continues."

It seems clear that an insurance company cannot be fined for neglecting to file a quarterly statement if such a statement has not been specifically required as a result of the Commissioner's request pursuant to the statute. In this case, however, we cannot agree with the respondent that the Commissioner's excusing the respondent from the filing requirement, long after the statement was admittedly due, rendered him unable to impose a penalty for the preceding period during which the statement had at all times been required.

In its "petition for reconsideration, modification or rehearing," the respondent asserted the following reasons why it ought to be relieved of the filing requirement:

"The filing of a report that is now four years old is irrelevant to the ability of Petitioner to transact business on a current basis in compliance with the rules and regulations of the Insurance Department. The information required to file the September 30, 1971 report is not in the possession of the present management of Petitioner. The time and expense required to reconstruct the information necessary would be unreasonably disproportionate to any possible benefits to be derived therefrom, all to the further detriment of the policy holders of this mutual company."

In relieving the company of the filing requirement, the Commissioner in his opinion explained his action in the following manner:

"This request will be granted. However, it should be understood that this modification of the original

Adjudication and Order is made only because of the difficulties faced by the company in reconstructing the data necessary for the report.

"By this action, we do not intend to suggest that the quarterly report as of September 30, 1971, was not required to be filed or would not be required to be filed now in the absence of this Order. The record reveals that quarterly statements are required from companies which, for various reasons, require special attention by the Insurance Department to assure a sound financial position. Such reports are used not only at the time they are filed for a current picture of the company's condition, but are also necessary in the event that the Department has cause to review the operations of the company over a span of years. Thus, under normal circumstances, it would be important even now for the Insurance Department to receive a quarterly statement for the period as of September 30, 1971."

The Commissioner thus made it very clear that his decision to relieve the respondent of the filing requirement was motivated entirely by the *present* hardship which such a task would represent for the respondent. This decision in no way indicated that the respondent had any excuse for failing to file the report when it was originally due. We believe, therefore, that the Secretary's actions were neither inconsistent nor contrary to his statutory authority.

The respondent's second argument is that the Commissioner's finding that the respondent did not file until February 28, 1973 the quarterly statement which was due to be filed on May 15, 1972, is not supported by substantial evidence. The respondent claimed that he had filed that report in June of 1972, but the Department's records indicated otherwise, and we must affirm the Commissioner's finding according to the "substantial evidence" standard set out in *A. P. Weaver and Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A.2d 515 (1971).

The penalty imposed here by the Commissioner may be harsh. It is clear, however, that we may not substitute our discretion for that of the Commissioner by modifying his order, unless there has been a manifest abuse of discretion in the imposition of the dollar penalty. *Wallace v. Insurance Department of the Commonwealth of Pennsylvania*, 9 Pa. Commonwealth Ct. 567, 308 A.2d 162 (1973). And such abuse we do not find.

We, therefore, issue the following

### ORDER

AND NOW, this 19th day of June, 1975, the adjudication of the Insurance Commissioner of Pennsylvania dated April 18, 1974, as modified by his order of October 2, 1974, is hereby affirmed.